OPINION
{¶ 1} Defendant, William Terry, appeals from his conviction and sentence for operating a motor vehicle while under the influence of alcohol.
 {¶ 2} On October 26, 2003, Lt. Varaly, a member of the security forces at Wright Patterson Air Force Base, was on routine patrol on S.R. 444 when he was dispatched on a call that a vehicle was parked across both lanes of Dayton-Yellow Springs Road, between S.R. 444 and Kauffman Avenue, with its motor running and the driver slumped over the steering wheel. Upon arriving at the scene Lt. Varaly observed a Ford F-150 pickup truck parked across both lanes of the roadway. The driver, Defendant, had his head resting against the back window of the truck.
 {¶ 3} After Lt. Varaly banged on the driver's window, Defendant looked up, and Varaly noticed that Defendant had bloodshot, watery eyes. Lt. Varaly opened the driver's door and asked Defendant if he needed medical assistance. Varaly noticed a strong odor of alcohol coming from the vehicle. Lt. Varaly called for paramedics and police, and then asked Defendant if he would surrender his car keys, which he did.
 {¶ 4} Trooper Huffman from the Ohio State Patrol responded to the scene. After speaking with Lt. Varaly, Huffman approached Defendant's vehicle, which was blocking both lanes of travel on Dayton-Yellow Springs Road. Trooper Huffman opened the driver's door and immediately noticed a strong odor of alcohol. Defendant's eyes were bloodshot and glassy. After Trooper Huffman got Defendant out of his vehicle he smelled alcohol on Defendant's breath.
 {¶ 5} Trooper Huffman administered the horizontal gaze nystagmus test to Defendant and received six out of a possible six clues. When Trooper Huffman asked Defendant if he had anything to drink, Defendant replied "seven or eight." Moreover, Defendant was not able to correctly tell Trooper Huffman where he was. When Trooper Huffman asked Defendant to recite the alphabet from "D" to "Q", Defendant replied: "DOG — just take me to jail." Defendant refused to take any further field sobriety tests and was arrested by Trooper Huffman for operating a motor vehicle while under the influence of alcohol. The entire encounter between Trooper Huffman and Defendant was recorded by the video camera in Huffman's cruiser.
 {¶ 6} Defendant was charged in Fairborn Municipal Court with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1). At a pretrial conference on December 8, 2003, Defendant learned of the existence of the videotape of his DUI arrest and orally requested a copy. Defendant followed up his oral request with two written requests in letters sent to the prosecutor on December 9 and December 22. On December 30, 2003, Defendant filed a motion to suppress the evidence, arguing that police lacked any reasonable suspicion of criminal activity to stop him and lacked probable cause to arrest him. On January 8, 2004, Defendant filed a motion for discovery requesting a copy of the videotape of his arrest. On February 20, 2004, the prosecutor sent Defendant's attorney a letter informing him that "the videotape no longer exists."
 {¶ 7} At a February 23, 2004 hearing, Defendant orally moved for a dismissal of the charge against him based upon the State's destruction of the videotape of his arrest. Defendant followed that up with a written motion to dismiss. On March 8, 2004, the trial court overruled Defendant's motion to dismiss. The court concluded that Defendant's due process rights were not violated because the videotape was not exculpatory but rather only potentially useful evidence, and there was no bad faith on the part of police in destroying the videotape. Following another hearing on April 19, 2003, the trial court overruled Defendant's motion to suppress the evidence. The court concluded that there was sufficient reasonable suspicion of DUI to detain Defendant for further investigation, and probable cause to arrest him for that offense.
 {¶ 8} Defendant subsequently entered a no contest plea to the DUI charge and was found guilty. The trial court sentenced Defendant to one hundred eighty days in jail, with one hundred seventy-seven days suspended and three days in a weekend intervention program in lieu of jail. The court also fined Defendant four hundred fifty dollars, placed him on five years probation, and suspended his driving privileges for eighteen months with an exception for driving to and from work.
 {¶ 9} Defendant has timely appealed to this court from his conviction and sentence.
 {¶ 10} First Assignment of Error
 {¶ 11} "The trial court erred by failing to dismiss the charge because the loss and/or destruction of audio/video evidence violated appellant's due process rights as protected by the 14th Amendment of the United States constitution and article 1, § 10 of the Ohio Constitution."
 {¶ 12} Defendant argues that the trial court erred in overruling his motion to dismiss this case because his due process rights were violated by the State's destruction of the videotape of his DUI stop and arrest. According to Defendant, the videotape would have allowed him to present exculpatory evidence that showed he passed the horizontal gaze nystagmus test, his speech was not slurred, his eyes were not bloodshot, and he had no trouble walking; evidence that demonstrates he was not under the influence of alcohol.
 {¶ 13} Defendant relies upon cases from other appellate districts, State v. Benton (2000), 136 Ohio App.3d 810; Statev. Benson, 152 Ohio App.3d 495, 2003-Ohio-1944, for the proposition that the destruction or failure to preserve videotapes of a DUI stop and arrest violates a defendant's due process rights. Those cases are distinguished from this case, however, because they involve situations where the State failed to preserve and/or destroyed the videotape after Defendant had requested it, which shifts the burden of proof regarding the exculpatory nature of the evidence, and/or the officer acted in bad faith in failing to preserve or destroying the evidence.
 {¶ 14} The State's failure to preserve material exculpatory evidence violates a defendant's due process rights. Californiav. Trombetta (1984), 467 U.S. 479, 104 S.Ct. 2528,81 L.Ed.2d 413. However, the failure to preserve evidence that by its nature or subject is merely potentially useful violates a defendant's due process rights only if the police or prosecution acted in bad faith. Arizona v. Youngblood (1988), 488 U.S. 51,109 S.Ct. 333, 102 L.Ed.2d 281; State v. Keith, 79 Ohio St.3d 514,1997-Ohio-367; State v. Martina (Dec. 28, 2001), Montgomery App. No. 18905, 2001-Ohio-7085. Material exculpatory evidence possesses a particular exculpatory value that was known before it was destroyed, and is therefore of such a nature that no comparable evidence could reasonably be obtained by the defense.Trombetta, supra; Martina, supra.
 {¶ 15} In this case it appears that the videotape was destroyed in the ordinary course of business pursuant to routine procedures of the Ohio State Patrol before any request was made by Defendant for that evidence. Defendant's arrest for DUI took place on October 26, 2003. Trooper Huffman testified that pursuant to the customary procedures of the Ohio State Patrol, the videotape would be erased after thirty days if no request has been made for it. By Defendant's own admission, his first request for the videotape was made orally at a pretrial conference on December 8, 2003, forty-three days after his stop and arrest occurred. Defendant's first written request for the videotape via a letter to the prosecutor, was made on December 9. Where evidence is destroyed pursuant to routine procedures before any request for it has been made, it is not the State's burden to show that the evidence was not exculpatory, but rather Defendant's burden to show that it was exculpatory. State v.Fuller (April 26, 2002), Montgomery App. No. 18994, 2002-Ohio-2055. Compare: Columbus v. Forest (1987),36 Ohio App.3d 169.
 {¶ 16} Defendant has failed to demonstrate that the destroyed videotape was exculpatory. Trooper Huffman testified to the contents of the videotape, having reviewed it before preparing his police report. Trooper Huffman testified that while the videotape captured his conversation with Defendant and his administration of the horizontal gaze nystagmus (HGN) test, it would not have depicted the condition of Defendant's eyes, including whether they were bloodshot or glassy, or Defendant's performance on the HGN test, or the odor of alcohol. Moreover, Defendant did not offer any testimony at the hearing disputing Trooper Huffman's testimony relating to the stop and arrest of Defendant for DUI.
 {¶ 17} While the videotape might have been helpful to Defendant in attacking Trooper Huffman's general credibility regarding whether he administered the HGN test in accordance with NHTSA standards, and the existence of certain factors indicative of intoxication such as slurred speech and impaired motor skills, on this record there is no basis to find that the videotape could exculpate Defendant. At best, the videotape was only potentially useful evidence. Fuller, supra; Martina, supra. Furthermore, it cannot be said that no other comparable evidence was reasonably available because, in addition to Trooper Huffman, several other officers were on the scene and witnessed the events leading to Defendant's arrest, including two Wright Patterson security guards, a Greene County Sheriff's Deputy, and Sgt. Dallas of the Ohio State Patrol. Thus, Defendant failed to demonstrate that the destroyed videotape was material exculpatory evidence, and accordingly was required to show that the State acted in bad faith in destroying that evidence. Youngblood, supra; Martina,supra; Fuller, supra. Defendant has failed to meet that burden also.
 {¶ 18} The evidence in this case demonstrates that, absent a request for it, the videotape would have normally been erased in accordance with the routine standardized procedures of the Ohio State Patrol after thirty days, well before Defendant requested that evidence. In addition, Trooper Huffman readily admitted that he made a mistake when he erased the tape pursuant to the regular thirty day cycle of the OSP, and he testified that he usually preserves DUI tapes until after disposition. Trooper Huffman stated that he did not erase the videotape because he thought it might help Defendant. Mistake, bad judgment or even negligence does not rise to the level of "bad faith" which implies a dishonest purpose, conscious wrongdoing, or an intent to mislead or deceive another. State v. Buhrman (Sept. 12, 1997), Greene App. No. 96CA145.
 {¶ 19} We agree with the trial court that the evidence in this case demonstrates no bad faith on the part of Trooper Huffman, but only an honest mistake in destroying the videotape.Fuller, supra; Martina, supra. Because the videotape was only potentially useful evidence and was not destroyed in bad faith, Defendant's due process rights were not violated and the trial court properly overruled his motion to dismiss this case.Youngblood, supra; Martina, supra; Fuller, supra.
 {¶ 20} A caveat, this court does not condone the destruction of videotapes that record events leading to an arrest. See:Fuller, supra; State v. Zawacki (July 11, 1997), Montgomery App. No. 16177. We will continue to look critically at the actions of police officers in destroying such evidence. In this case, however, that critical inquiry leads us to conclude that Defendant's due process rights were not violated.
 {¶ 21} The first assignment of error is overruled.
 {¶ 22} Second Assignment of Error
 {¶ 23} "The trial court erred by failing to suppress evidence of field sobriety tests not recognized by the NHTSB."
 {¶ 24} Defendant argues that the trial court erred in failing to suppress evidence of a field sobriety test given to him by Trooper Huffman that is not recognized by the National Highway Traffic Safety Administration (NHTSA), i.e. an "alphabet test." Defendant claims that such unrecognized tests are inadmissible as evidence of intoxication, and cannot be used in determining whether probable cause exists to arrest a person for driving under the influence of alcohol, citing State v. Homan,89 Ohio St. 3d 421, 2000-Ohio-212. Defendant further argues that absent the inadmissible results of that alphabet test, Trooper Huffman did not have probable cause to arrest him for driving while under the influence of alcohol.
 {¶ 25} Our examination of the record, including Defendant's motion to suppress and the evidentiary hearing held on that motion on April 19, 2004, reveals that Defendant failed to raise in the trial court this issue about which he now complains on appeal: that the trial court erred in failing to suppress evidence regarding the "alphabet test" because that is not one of the three standardized field sobriety tests recognized by the NHTSA. We also note that the trial court did not address or decide that issue. Accordingly, because Defendant failed to raise this issue in the trial court, and failed to make a record in the trial court from which that error could be determined, we decline to consider this issue for the first time on direct appeal.State v. Petrusch (November 15, 1995), Montgomery App. No. 14983; State v. Awan (1986), 22 Ohio St.3d 120.
 {¶ 26} We do note that even when the results of standardized field sobriety tests are inadmissible because those tests are not administered in sufficient compliance with NHTSA standards, the officer can nevertheless testify as to his observations of the defendant's performance on those tests as lay evidence of intoxication. State v. Schmitt, 101 Ohio St.3d 79,2004-Ohio-37. In any event, in this case the fact that police discovered Defendant's vehicle parked in the roadway blocking two lanes of traffic, Defendant was asleep or passed out behind the wheel, Defendant had a strong odor of alcohol and his eyes were glassy and bloodshot, Defendant could not state where he was located, Defendant admitted having seven or eight drinks, and Defendant failed a horizontal gaze nystagmus test, provided more than sufficient probable cause for Trooper Huffman to arrest Defendant for driving while under the influence of alcohol, even without the alphabet test.
 {¶ 27} The second assignment of error is overruled.
 {¶ 28} Third Assignment of Error
 {¶ 29} "The trial court erred by failing to suppress evidence obtained as the result of an illegal search and seizure of defendant."
 {¶ 30} Defendant argues that Trooper Huffman's conduct in opening the driver's door of Defendant's vehicle when he first approached that vehicle, before ordering Defendant to exit the vehicle, constitutes an illegal search. Defendant did not raise or argue that specific issue, however, in the trial court below, nor did the trial court address or decide that issue. Accordingly, we decline to decide that issue for the first time on direct appeal. See: Petrusch, supra; Awan, supra.
 {¶ 31} In any event, even if we were to assume that this issue is properly before us for review, we conclude that it lacks merit. When police first discovered Defendant's vehicle it was already stopped/parked in such a manner as to constitute an obvious traffic violation. The vehicle was parked across the traveled portion of the roadway blocking both lanes of travel on Dayton-Yellow Springs Road. Moreover, after Trooper Huffman arrived on the scene and conversed with Lt. Varaly about the situation before approaching Defendant's vehicle, Huffman had sufficient probable cause to detain Defendant for further investigation of DUI and require field sobriety tests.
 {¶ 32} Under those facts and circumstances, Trooper Huffman unquestionably had the right to exercise control over Defendant by ordering him to exit his vehicle. Maryland v. Wilson (1997),519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41; State v. Ross
(August 29, 1997), Montgomery App. No. 16135. We fail to see how Huffman's conduct in first opening the driver's door, followed by a request for Defendant to exit his vehicle, violated Defendant'sFourth Amendment rights.
 {¶ 33} The third assignment of error is overruled. The judgment of the trial court will be affirmed.
Fain, P.J. and Wolff, J., concur