[Cite as *State v. Cotten*, 2015-Ohio-5405.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
|   Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 2015 CA 00094 |
| THOMAS W. COTTEN | |
|   Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:   Criminal Appeal from the Court of Common
                  Pleas, Case No.  2014 CR 01330


JUDGMENT:          Affirmed


DATE OF JUDGMENT ENTRY:   December 21, 2015


APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

JOHN D. FERRERO        JEFFREY JAKMIDES
PROSECUTING ATTORNEY     325 East Main Street
RENEE M. WATSON       Alliance, Ohio  44601
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton,Ohio  44702-1413

*Wise, J.*

{¶1}   Appellant Thomas W. Cotten appeals following his felony conviction, in the Court of Common Pleas, Stark County, for the offenses of manufacturing explosives and inducing panic. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2}   On February 15, 2014, an explosion and fire leveled a detached garage located on appellant's residential property in Hartville, Ohio. Appellant was in said structure at the time and was seriously injured as a result. The Hartville Fire Department, Hartville Police Department, and the Stark County Sheriff's Office responded to the scene, as well as federal investigators from the Bureau of Alcohol Tobacco and Firearms ("ATF"). In addition, as firefighters were putting out "hot spots" to prevent further explosions, Brian Peterman, a fire investigator for the State of Ohio Division of State Fire Marshall's Office, arrived at the location. Peterman was briefed as to what had occurred to that point.

{¶3}   As they worked in the debris, the aforesaid responders and investigators noticed chemicals, tubing and other items used to manufacture explosive devices. The Summit County Bomb Squad subsequently took possession of some of the discovered items.

{¶4}   In addition, the deputies obtained information that a natural gas heater had been part of the utilities in the destroyed garage. Sergeant Ryan Carver accordingly examined the gas line at the scene and took photographs of it, as well as the damaged heater which was located in the debris. However, the heater and its components were not seized by law enforcement personnel.

**{¶5}** After completing their investigation, the agencies cleared the scene. Investigator Peterman completed his work at the scene on February 17, 2014.

**{¶6}** However, on February 18, 2014, Brian Churchwell of Churchwell Fire Consultants, Inc., who had been tasked by the Erie Insurance Company to investigate the explosion in relation to potential insurance claims, entered onto appellant's property. On that date, appellant was still in an induced coma at the hospital. According to the adjuster for Erie, Rudy Guy, the entry was made with the consent of appellant's wife, Kimberly. Churchwell was accompanied by Investigator Peterman. Churchwell subsequently prepared a report of his findings, and Peterman drafted a supplemental report on the incident.

**{¶7}** Churchwell's report notes *inter alia* the presence of "a gas-fire Rezner type heater" at the site of the explosion. The report also includes several photos of Churchwell and/or his associates touching, moving, and otherwise handling the heater and the "attached gas piping" located at the scene. The report does not, however, make any specific mention of an actual removal of the heater or any gas piping from the scene by Churchwell. However, Investigator Peterman did observe Churchwell collect the remains of the natural gas heater that had been located in the garage. *See* Tr. at 28-31.

**{¶8}** On August 25, 2014, appellant was indicted on one count of manufacturing or processing explosives (R.C. 2923.17(B)), a felony of the second degree, and one count of inducing panic (R.C. 2917.31(A)(3)(C)(3)), a felony of the fourth degree.[1]

---

[1] The first statute states that "[n]o person shall manufacture or process an explosive at any location in this state unless the person first has been issued a license, certificate of registration, or permit to do so from a fire official of a political subdivision of this state or from the office of the fire marshal." The second statute states that "[n]o person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or

{¶9} On January 12, 2015, appellant filed a "motion to suppress and dismiss," to which the State of Ohio responded on February 17, 2015. The key issue was the preservation of the garage heater unit and riser pipe. Following a hearing on February 20 and 24, 2015, appellant's motion to suppress and/or dismiss was denied.

{¶10} Appellant entered pleas of "no contest" on both of the above charges on April 22, 2015. The trial court thereupon sentenced appellant *inter alia* to five years of community control.

{¶11} On May 12, 2015, appellant filed a notice of appeal. He herein raises the following sole Assignment of Error:

{¶12} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS, AS A THIRD-PARTY INVESTIGATOR ENTERED THE SCENE OF THE ALLEGED CRIME ACCOMPANIED BY A SELF-DESCRIBED 'LAW ENFORCEMENT OFFICER' WHO WAS STILL INVESTIGATING THE MATTER AND TAMPERED WITH AND REMOVED POTENTIALLY MATERIALLY EXCULPATORY EVIDENCE, THUS VIOLATING THE APPELLANT'S DUE-PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

I.

{¶13} In his sole Assignment of Error, appellant contends the trial court erred in denying his motion to suppress.

{¶14} As an initial matter, we note appellant's above assigned error language at first blush suggests that a trial court errs to the prejudice of a defendant in denying his or

---

alarm, by *** [c]ommitting any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm." Inducing panic is a fourth-degree felony if physical harm results.

her motion to suppress alleged materially exculpatory evidence, in this instance a garage heater and related components. We find such an argument to be non-cognizable, as it would be self-contradictory for a defendant to urge that evidence allegedly in his or her favor should not have been allowed. Indeed, "[t]he very purpose of a motion to suppress is to escape the *inculpatory* thrust of evidence in hand ***." *See State v. Dimmings,* 8th Dist. Cuyahoga No. 80149, 2002–Ohio–803, quoting *Illinois v. McCray,* 386 U.S. 300, 307, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), emphasis added. The trial court file reveals appellant's pertinent motion was captioned as a "motion to suppress and dismiss," but it focused exclusively on the argument that the State violated his due process rights by failing to preserve exculpatory or potentially exculpatory evidence. In the interest of justice, we will herein analyze the issues in this matter along similar lines, addressing appellant's essential contention that the State's alleged destruction of or failure to preserve the garage's heater and riser pipe, which he claims are materially exculpatory, violated his due process rights.

{¶15} In order to establish a violation under *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, a defendant must prove that the prosecution failed to disclose evidence upon request, the evidence was favorable to the defense, and the evidence was material. *State v. Garn*, 5th Dist. Richland No. 02CA45, 2003-Ohio-820, ¶ 23, citing *Moore v. Illinois* (1972), 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706. It is well-established that the defendant carries the burden to prove a *Brady* violation rising to the level of a denial of due process. *See State v. Kulchar*, 4th Dist. Athens No. 10CA6, 2015-Ohio-3703, ¶ 42 (citations omitted). We generally review a *Brady* materiality question on appeal as a matter of law. *See State v. Fox*, 985 N.E.2d 532, 2012-Ohio-4805, ¶ 25 (4th

Dist.), citing *State v. Geeslin,* 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 12-13. *See, also*, *United States v. Bullock*, 6th Cir. Nos 02–5854, 02–6229, 02–6232, 130 Fed.Appx. 706, 722 (2005).

**{¶16}** It is initially noteworthy in the case *sub judice* that appellant was not charged *per se* with causing an explosion; nonetheless, because the second count, inducing panic, was effectively tied to the occurrence of the explosion, it is incumbent that we consider the import of the State's handling of the heater and related components.

**{¶17}** In regard to appellant's claim of destruction of evidence, we first find he provides scant refutation of the trial court's conclusion that the private consultant for the insurance company, Churchwell, had collected the heater and riser from the scene, wrapped it in plastic, and placed it in his company's storage room. *See* Judgment Entry, March 3, 2015, at 6-7. Thus, as the trial court recognized, "[t]he heater and riser have been available for the defendant, his counsel, or anyone else to view upon request." *Id.* at 7. Appellant nonetheless argues that Churchwell, with the involvement of Investigator Peterman, tampered with the heater and related components such that they "effectively destroyed any opportunity for [appellant] to secure evidence that the explosion at issue was in fact caused by a natural gas leak." Appellant's Brief at 6. However, other than appellant's own recollection in deposition that he smelled natural gas in the garage just before the explosion, appellant provides nothing definitive to indicate that the heater was causally connected to the explosion in the garage. We note Churchwell's report instead concluded that there was no evidence that the heater or the riser pipe was involved in the explosion or resulting fire. *See* Appendix B at 16, 20. Appellant further points to nothing

in the record to show that the heater and riser were damaged or contaminated for evidentiary purposes by being left at the scene for four days.

{¶18} Moreover, in *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281, the United States Supreme Court stated: "The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. * * * We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve *potentially* useful evidence does not constitute a denial of due process of law."

{¶19} *Id.* at 57-58, emphasis added.

{¶20} The term "bad faith" generally implies something more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (citation omitted).

{¶21} Accordingly, even assuming *arguendo* that the overall handling of the heater by Churchwell, acting in the presence of a state investigator on the property, constituted a failure of the State to properly preserve evidence which is still extant and might have been subject to further expert review, we find no demonstration of bad faith on the part of the State in this instance.

**{¶22}** Therefore, we hold the trial court did not err in denying appellant's motion to suppress and/or dismiss.

**{¶23}** Appellant's sole Assignment of Error is overruled.

**{¶24}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

JWW/d 1204