[Cite as *State v. Jones*, 2014-Ohio-3460.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| DAVID JONES, JR. | : | Case No. 2013 AP 10 0041 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 2013 CR 03 0041


JUDGMENT:                         Affirmed


DATE OF JUDGMENT:                 August 6, 2014


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

R. SCOTT DEEDRICK                         AARON A. SCHWARTZ
125 East High Avenue                      409 South Prospect Street
New Philadelphia, OH  44663               Ravenna, OH  44266

*Farmer, J.*

{¶1} On March 1, 2013, the Tuscarawas County Grand Jury indicted appellant, David Jones, Jr., on two counts of operating a motor vehicle while under the influence in violation of R.C. 4511.19. Said charges arose after Tuscarawas County Sherriff's Deputy Phillip Valdez stopped appellant for a marked lanes violation.

{¶2} On March 29, 2013, appellant filed a motion to dismiss and/or suppress, claiming an illegal stop and challenging the field sobriety and breath tests. A hearing commenced on May 6, 2013. By judgment entry filed July 18, 2013, the trial court denied the motion.

{¶3} On August 5, 2013, appellant pled no contest to one of the counts. The remaining count was dismissed. By judgment entry filed same date, the trial court found appellant guilty. By judgment entry filed September 20, 2013, the trial court sentenced appellant to three years of community control.

{¶4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶5} "THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT-APPELLANT'S MOTION TO DISMISS AND/OR SUPPRESS WHERE THE POLICE HAD NO PROBABLE CAUSE TO STOP THE DEFENDANT-APPELLANT FOR OPERATING A VEHICLE UNDER THE INFLUENCE, IN VIOLATION OF DEFENDANT-APPELLANT'S RIGHT TO BE FREE FROM GOVERNMENT INTERFERENCE GUARANTEED BY THE FOURTH AND FOURTEENTH

AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 14, ARTICLE I OF THE OHIO CONSTITUTION."

II

{¶6} "THE TRIAL COURT ERRED WHEN IT ALLOWED UNRELIABLE AND/OR INACCURATE TESTS TO BE ADMITTED INTO EVIDENCE."

III

{¶7} "THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT-APPELLANT'S MOTION TO DISMISS AND/OR SUPPRESS BECAUSE IT IS A VIOLATION OF DUE PROCESS FOR THE STATE, IN AN OVI CASE, TO DESTROY A URINE SAMPLE PROVIDED BY A DEFENDANT, AT THE REQUEST OF LAW ENFORCEMENT."

I

{¶8} Appellant claims the trial court erred in denying his motion to dismiss/suppress as Deputy Valdez lacked sufficient probable cause and articulable facts to warrant a stop. We disagree.

{¶9} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 486 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State*

*v. Williams,* 86 Ohio App.3d 37 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist.1993); *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶10} In *Terry v. Ohio,* 392 U.S. 1, 22 (1968), the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to *Terry*, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman,* 64 Ohio St.2d 291 (1980), paragraph one of the syllabus.

{¶11} As the Supreme Court of Ohio recognized in *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, a review of a trial court's findings of fact is limited:

"Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, [20], 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, at ¶ 8.

{¶12} In its judgment entry filed July 18, 2013, the trial court entered the following pertinent findings:

**Findings of Fact**

1. Deputy Valdez observed a slow vehicle southbound on State Route 800. The vehicle was driving 45-50 mph on a 55 mph road.

2. Upon following the vehicle, Deputy Valdez observed the vehicle driving left of center, then driving across the fog line at the right, over-correcting and crossing the center line again.

3. The first time the truck drove left of center, one-half of the vehicle crossed the center line.

4. When the vehicle crossed the fog line, the truck produced a cloud of dust.

5. Deputy Valdez closed the gap between the cruiser and truck in order to get a view of the license plate. The license plate was not lighted. The Deputy sought to identify the license plate number in order to call it in to the dispatcher, pursuant to protocol.

6. When the deputy's cruiser came close, the driver of the truck hit his brakes and came to a near stop.

{¶13} Appellant argues these specific facts are insufficient to create a valid *Terry* stop.

{¶14} Our first inquiry is whether the testimony supports the findings enumerated by the trial court. We find that it does. Deputy Valdez testified he observed appellant southbound on State Route 800 at a slow rate of speed with no license plate light. T. at 42. He observed that the vehicle "went left of center, it overcorrected, went off the right side of the road past the fog line, overcorrected again and went left of center." T. at 43. The vehicle did a "brake check," almost coming to a complete stop. T. at 43, 44, 46, 47.

{¶15} Our second inquiry is whether the facts satisfy the applicable legal standard. We find going left of center, overcorrecting, crossing the fog line, overcorrecting again, and going left of center again, coupled with the slow speed and

the brake check, are sufficient articulable facts to establish a reasonable suspicion of criminal activity.

{¶16} Upon review, we find the trial court did not err in denying the motion to suppress.

{¶17} Assignment of Error I is denied.

II

{¶18} Appellant claims the trial court erred in admitting the results of the breath test machine into evidence without first holding an evidentiary hearing. We disagree.

{¶19} Appellant concedes an objection was not made to the admission of the Intoxilyzer 8000 test results, but argues the trial court sua sponte should have determined its reliability pursuant to Evid.R. 104.

{¶20} It is appellant's position that the trial court should have held an evidentiary hearing on the reliability of the Intoxilyzer 8000 because of the ruling in *State v. Lancaster,* Marietta M.C. No. 12 TRC 1615 (Aug. 14, 2013), made one month after the trial court's denial of the motion to suppress. In *Lancaster,* the Marietta Municipal Court held a full evidentiary hearing and suppressed the results of the Intoxilyzer 8000. We disagree with appellant's position. A ruling of a municipal court outside the trial court's jurisdiction and outside the jurisdiction of this appellate district has no binding effect.

{¶21} Because an objection was not made, we must consider this issue under a plain error standard. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long,* 53 Ohio St.2d 91 (1978); Crim.R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the

error.  *Long.*   Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *Id.* at paragraph three of the syllabus.

{¶22}  Upon review, we find no error in the trial court's admission of the evidence.

{¶23}  Assignment of Error II is denied.

III

{¶24} Appellant claims the trial court erred in denying his motion to dismiss/suppress the results of the breath test when he had submitted a urine sample that was subsequently destroyed and the "reliability of one could have been verified by the results of the other."  Appellant's Brief at 12.  We disagree.

{¶25}  In its judgment entry filed July 18, 2013, the trial court found the following facts:

15. While awaiting the officer certified for the Intoxilyzer 8000, Deputy Valdez collected a urine sample from the Defendant.

16. Thereafter, since the officer was available to perform the breath test, and since the urine test could reveal multiple substances, Deputy Valdez permitted the Defendant to elect his method of testing.  Before testing the urine, the Defendant elected the breath test, and the officers disposed of the urine sample.

{¶26}  The trial court concluded:

The Court **FINDS** that the Defendant consented to the use of the breath test instead of the urine test, and the State had no duty to preserve the urine sample.

The Court **FINDS** that the Defendant has not met his burden of showing that the destroyed urine sample was materially exculpatory evidence, or that the destruction was done in bad faith.

{¶27} While waiting for the Intoxilyzer 8000 operator to arrive, appellant submitted a urine sample. T. at 59. After the operator arrived, Deputy Valdez asked appellant if he wanted to take the breath test as a urine sample will be "tested for illegal drugs and other-other things." T. at 60. Appellant advised that yes, he wanted to take the breath test. *Id.* Deputy Valdez disposed of the urine sample as appellant had taken the breath test and "[i]t would have cost us money to submit the urine test also and he–he elected to take the breath test." T. at 61.

{¶28} "Where evidence is destroyed pursuant to routine procedures before any request for it has been made, it is not the State's burden to show that the evidence was not exculpatory, but rather Defendant's burden to show that it was exculpatory." *State v. Terry,* 2nd Dist. Greene No. 04CA0063, 2004-Ohio-7257, ¶ 15. "If a defendant is unable to show that the withheld evidence is materially exculpatory, a defendant may nonetheless show a violation of his due process right to a fair trial if the prosecution withheld, in bad faith, potentially exculpatory evidence." *State v. Fox,* 4th Dist. Ross No. 11CA3302, 2012-Ohio-4805, ¶ 27.

{¶29} In this case, the advice given by Deputy Valdez was correct, and there was no indication of bad faith. Further, there was no demonstration that a urine test would have been materially exculpatory. To be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta,* 467 U.S. 479, 489 (1984).

{¶30} Upon review, we find the trial court did not err in denying appellant's motion to suppress the breath test results.

{¶31} Assignment of Error III is denied.

{¶32} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Wise, J. concur.

SGF/sg 728