[Cite as *State v. Allen*, 2016-Ohio-7045.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103492**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# DAVID W. ALLEN

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-91-264901-ZA

**BEFORE:** E.A. Gallagher, P.J., Kilbane, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** September 29, 2016

**ATTORNEYS FOR APPELLANT**

John J. Ricotta
John J. Ricotta, Co. L.P.A.
The IMG Center
1360 E. 9th Street, Suite 910
Cleveland, Ohio 44114

Henry J. Hilow
McGinty, Hilow & Spellacy Co., L.P.A.
614 W. Superior Avenue, Suite 1300
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Daniel T. Van
         Christopher D. Schroeder
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, P.J.:

**{¶1}** Defendant-appellant David Allen appeals the denial of his motion for new trial and petition for postconviction relief that were filed in the Cuyahoga County Court of Common Pleas.   For the following reasons, we affirm.

**Facts and Procedural Background**

**{¶2}** In 1991, Allen was convicted of two counts of aggravated murder and one count of aggravated robbery and a death sentence was imposed.[1]   The victim in this case was Chloie English.   This court affirmed Allen's convictions and sentence in *State v. Allen*, 8th Dist. Cuyahoga No. 62275, 1993 Ohio App. LEXIS 4392 (Sept. 9, 1993).   The Ohio Supreme Court affirmed this court's judgment in *State v. Allen*, 73 Ohio St.3d 626, 1995-Ohio-283, 653 N.E.2d 675, and set forth the relevant facts as follows:

> English knew Allen through her participation in a prison ministry program. English ministered to five convicted felons, including Allen. She visited and corresponded with Allen while he was in prison and they stayed in touch after his release in 1989. On January 9, 1991, English received a phone call from someone named "David." According to English's daughter, the conversation left English shaking.
>
> English was last seen alive at 5:45 p.m. on January 24, 1991, by her friend Judy Sperry ("Sperry") who had visited English in her home. At 6:45 p.m. the next day, English's friend Cathy Curry found English lying dead in her living room. The doors to English's house were unlocked, which was

---

[1]The trial court also imposed a prison term of 15 to 25 years for Allen's aggravated robbery conviction.

unusual because English always locked her doors and never opened them to strangers.

After English's body was found, Bedford police officers secured, photographed, and searched the house. Detective Gerry Artl found English's eyeglasses on the floor and noted a large thumbprint on the inside of the left lens. That thumbprint turned out to belong to David Allen. Police recovered ten cigarette butts from English's kitchen garbage. Saliva tests showed that five of the butts had been smoked by a Type O secretor. (The rest lacked sufficient saliva for testing.) Two of the butts still had the "Doral" brand name on them. Allen is a Type O secretor, and there was evidence that he smoked Dorals. English disapproved of smoking and was a Type O non-secretor.

Although English's last known visitor was a woman, someone had left the toilet seat up in English's bathroom. Moreover, the coffee pot in the kitchen, empty when Sperry left, was half full when English's body was discovered. Police found several items burnt in the fireplace, including the remains of English's purse and wallet, a broken ashtray, a broken coffee cup, a broken drinking glass, a wine bottle, and a knife with its handle burnt off.

Police found no money in the house, even though English always kept about $50 in her wallet for emergencies. English's credit cards and checkbook were also missing.

Detective Timothy Oleksiak ("Oleksiak") obtained the names of prisoners with whom English had corresponded. All but Allen were still in prison. Oleksiak and Artl had the print on the eyeglasses compared with Allen's; when the print was identified as Allen's, Oleksiak got an arrest warrant.

On January 29, Allen was arrested. He was wearing a denim jacket with a stain on one of the sleeves. That stain turned out to be Type O blood, the same type Allen and English shared. Allen was carrying a bus transfer

issued between 6:04 and 7:00 a.m., January 25, on the No. 41 Warrensville bus route. The driver identified Allen as a passenger he had picked up on January 25 at 6:04 a.m., at a stop 1.3 miles from English's house.

Allen also had a refund receipt for a Greyhound bus ticket. There was no record of when the ticket was sold, but Allen got the refund on January 25, at 11:28 p.m. Moreover, when Detective Artl searched Allen's bedroom, he found two packed suitcases under Allen's bed.

*Id.*

{¶3} After Allen's convictions were affirmed, he filed an application for reopening pursuant to App.R. 26(B) which was denied by this court. The Ohio Supreme Court affirmed that decision in *State v. Allen*, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.

{¶4} On September 20, 1996 Allen filed a petition for postconviction relief. The trial court denied Allen's petition without a hearing. This court affirmed the trial court's decision in *State v. Allen*, 8th Dist. Cuyahoga No. 72427, 1998 Ohio App. LEXIS 2414 (June 4, 1998).

{¶5} On February 16, 2006 the trial court granted a motion for DNA testing filed by Allen relating to the blood sample found on his jacket and a blood sample from a pair of gloves recovered from the scene. The trial court ordered further DNA testing on the gloves to be performed by Orchid Cellmark Laboratories in May 2011.

{¶6} Based on the results of the DNA testing, Allen filed a supplemental motion for new trial and petition to set aside the death penalty determination and verdict on November 28, 2011. The trial court denied Allen's motion and petition without a hearing on August 14, 2015.

**I. Motion for New Trial**

{¶7} In his first assignment of error, Allen argues that the trial court abused its discretion when it denied his motion for a new trial.[2]

{¶8} A Crim.R. 33 motion for a new trial is addressed to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Schiebel*, 55 Ohio St.3d 71, 77, 564 N.E.2d 54 (1990). An abuse of discretion implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1993).

{¶9} To warrant the granting of a motion for a new trial in a criminal case, based on the grounds of newly discovered evidence:

> it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Barnes*, 8th Dist. Cuyahoga No. 95557, 2011-Ohio-2917, ¶ 23, quoting *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

{¶10} Allen further argues that the state violated the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Pursuant to *Brady*, the prosecutor is

---

[2]In the heading of his first assignment of error Allen also asserts that the trial court erred in denying his petition to set aside the death penalty determination and verdict. However, Allen reserved his arguments pertaining to the denial of the petition for his second assignment of error and we address the issue there.

required to disclose exculpatory and impeachment evidence that is material to guilt. *Brady* at 87. Evidence favorable to the defendant is deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Bagley* at 669; *see also State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the syllabus. The Supreme Court of Ohio cautioned that in order to find the undisclosed evidence material, the omission must "reflect our overriding concern in the justice of the finding of guilty," which means "the omission must be evaluated in the context of the entire record," and, if "there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *State v. Jackson*, 57 Ohio St.3d 29, 34, 565 N.E.2d 549 (1991), quoting *United States v. Agurs*, 427 U.S. 97, 112-113, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

{¶11} The defendant carries the burden to prove a *Brady* violation rising to the level of a denial of due process. *See State v. Kulchar*, 4th Dist. Athens No. 10CA6, 2015-Ohio-3703, ¶ 42, citing *State v. Iacona*, 93 Ohio St.3d 83, 92, 2001- Ohio-1292, 752 N.E.2d 937. We review a *Brady* materiality question on appeal as a matter of law and, therefore, apply a de novo standard of review. *See State v. Fox*, 4th Dist. Ross No. 11CA3302, 2012-Ohio-4805, ¶ 25, citing *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 12-13. *See also United States v. Bullock*, 130

Fed.Appx. 706, 722 (6th Cir.2005), citing *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir.1991) ("The standard of review for the materiality of a purported *Brady* violation is de novo because it presents a mixed question of law and fact.").

{¶12} There are three essential components of a *Brady* violation: (1) evidence at issue must be favorable to the accused because it is exculpatory or impeaching; (2) evidence must have been willfully or inadvertently suppressed by the State; and (3) prejudice ensued. *Skinner v. Switzer*, 562 U.S. 521, 536, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011), citing *Strickler v. Greene*, 527 U.S. 263, 281, 282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

{¶13} Allen argues that the state committed two *Brady* violations in this instance by (1) failing to disclose a pair of blood-stained gloves found at the scene of the murder and (2) failing to disclose a police report wherein a neighbor of the victim, Julie Walker, reported observing a black male approach the home of the victim on Wednesday, January 23 or Thursday, January 24, 1991. Allen previously challenged the state's failure to disclose Julie Walker's report in his 1996 petition for postconviction relief. In *State v. Allen*, 8th Dist. Cuyahoga No. 72427, 1998 Ohio App. LEXIS 2414 (June 4, 1998), this court rejected Allen's *Brady* challenge to this report concluding that it "[could] not be considered exculpatory nor material." Therefore, Allen's present challenge to this material is barred by res judicata. *State v. Lott*, 8th Dist. Cuyahoga Nos. 79790, 79791, 79792, 2002-Ohio-275, ¶ 36-39; *State v. Flora*, 8th Dist. Cuyahoga No. 87544, 2006-Ohio-5732, ¶ 43.

{¶14} Turning to the matter of the blood-stained gloves, Allen argues that the state failed to disclose that it had found a pair of gloves with blood stains at the feet of the victim. The recovery of the gloves was documented in a 1991 Bedford Police Department report.

{¶15} Y-STR DNA testing was performed on the gloves by Orchid Cellmark Laboratories. The results were as follows: (1) due to a low amount of male DNA and a possible mixture, no determination could be made regarding the DNA profile obtained from the exterior of the right glove; (2) a DNA mixture of at least two males was detected in the interior of the right glove, but due to the low amount and possible mixture, no determination could be made as to whether Allen was a contributor; (3) male DNA was not detected on the exterior of the left glove; and (4) the interior of the left glove produced a DNA mixture of at least two males. Allen was excluded as a contributor to the DNA recovered from the interior of the left glove.

{¶16} Allen's motion for a new trial asserted his claim that the state had withheld this evidence with an affidavit from his trial attorney who averred:

> During the discovery process it was never disclosed by the prosecuting attorneys that a pair of bloody gloves were found at the feet of the victim's body.
>
> I did a review of a video of the crime scene but was unable to view the gloves, nor the alleged victim's eyeglasses by the body.

{¶17} After examining the record, including the affidavit of Allen's trial attorney, the trial court found that Allen failed to demonstrate a violation of *Brady* by the state in this instance, explaining:

> Allen's attorney had access to physical evidence obtained at the crime scene and a videotape of the crime scene during pretrial discovery. During the trial, video of the crime scene was paused and the prosecution specifically referred to the gloves in questioning Bedford police detective Gerry Artl. The video includes specific discussion referencing the gloves in relation to English's body. Additionally, Allen's counsel declined to cross-examine Sperry after she testified to giving English a pair of gloves. Furthermore, in 1996, Allen filed a motion containing a Bedford police report documenting the recovery of gloves from the crime scene. Thus, even assuming Allen requested disclosure of the gloves, Allen was provided access to the gloves and had knowledge of the gloves.

{¶18} We agree with the trial court's assessment and find that the averments of Allen's trial counsel are refuted by the record. In a response to a request for notice of evidence, filed April 25, 1991, the state documented its compliance with Allen's requests for discovery:

> A meeting was held with defense counsel in the Cuyahoga County Prosecutor's Office on Tuesday, April 16, 1991 at 2:00 p.m. At that time, defense counsel was able to view the seven (7) boxes of evidence taken from both the victim's and the defendant's place of residence. In addition, counsel for the defendant view [sic] the photographs from the County Coroner's Office, Trace Evidence Unit, and the Bedford Police Department.
>
> ***
>
> Additionally, a crime scene video tape is being duplicated and supplied to the defense.

{¶19} The above-referenced video was played at trial and depicts two plainly visible brown gloves found underneath the victim's left leg. The crime scene investigators in the video explicitly noted the gloves while narrating the video, commenting that the victim has a purple discoloration of her calf and an indentation where the "calf was laying up against maybe that * * * either these gloves or something." Detective Artl testified while the video was played and confirmed that the reference was to a pair of gloves later determined to be given to the victim by her friend Judy Sperry. Sperry testified that she gave English a pair of gloves that were too tight for her but fit English perfectly. Sperry's testimony described the gloves as leather winter gloves with a fur lining that she last saw in English's home near the rocking chair. Consistent with this testimony, the gloves were found underneath English's body near her rocking chair.

{¶20} Under these facts we cannot say that Allen has demonstrated a *Brady* violation.[3] In light of this, we consider Allen's DNA evidence from the Orchid Cellmark testing under the abuse of discretion standard for newly discovered evidence rather than the elevated standard for a *Brady* violation.

---

[3] We note that we granted a motion for leave to supplement Allen's brief with the United States Supreme Court's decision in *Wearry v. Cain*, 577 U.S.____, 136 S.Ct. 1002, 194 L.Ed. 2d 78 (2016). We do not find that case to be applicable to Allen. Allen argues that pursuant to *Wearry* the trial court in this instance erred in evaluating the materiality of the glove-related evidence in isolation rather than cumulatively with the other evidence on the record. However, as we noted above, our review of the materiality of *Brady* evidence on appeal is de novo. More importantly, we do not reach that question because we find no *Brady* violation here because there is no evidence on the record to indicate that the glove-related evidence was willfully or inadvertently suppressed by the State.

**{¶21}** We find that the trial court did not abuse its discretion in denying Allen's motion for a new trial on the grounds of newly discovered evidence because the Orchid Cellmark DNA evidence does not discloses a strong probability that it will change the result if a new trial is granted.

**{¶22}** To begin, there is no evidence in the record to suggest that the blood stains on the gloves came from anyone other than English. Orchid Cellmark's testing was limited to Y-STR testing that reveals only male DNA and ignores all the female DNA present in a sample. *State v. Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 7; *State v. Prade*, 126 Ohio St.3d 27, 2010-Ohio-1842, 930 N.E.2d 287, ¶ 21. That blood was found on gloves recovered from underneath the body of a victim who suffered sixteen stab wounds and had both her wrists slashed is not a revelation that alters the court's view of the evidence.

**{¶23}** While the Orchid Cellmark report reveals that the DNA of two males was, at some point, deposited in the interior of the left glove, this tells us nothing about the time frame, the circumstances of that contact or the form of the DNA recovered from the glove.

**{¶24}** Even excluding the significant evidence against Allen, it is hard to conceive how the DNA evidence from the gloves would be exculpatory. The record establishes that the gloves originated from Judy Sperry and not from the theorized perpetrators. The gloves were found in the same location that Sperry last saw them before English's death— next to English's rocking chair. Allen would have to convince the jury that two

unknown men entered English's home without force, found and used women's winter gloves in the commission of her murder, took turns putting on the gloves so as to both left DNA at the scene and then left the gloves in the precise spot they were last seen by Sperry— next to the rocking chair and underneath English's body. This theory is wholly inconsistent with actions of the perpetrator who burned other evidence of the crime in English's fireplace.

{¶25} Finally, Allen argues that the evidentiary significance of the gloves is bolstered by (1) a 1996 affidavit from a forensic pathologist who opined that English's time of death was between 11:30 a.m. and 5:30 p.m. on January 24, 1991 (roughly twelve and a half hours earlier than the time of death provided at trial by the Coroner's office) and (2) a 2007 Cuyahoga County Coroner's Office report that concluded that the blood found on Allen's jacket, referenced above in the Ohio Supreme Court's recitation of facts, did not match the DNA profile of either Allen or English. Viewed as context for evaluation of the DNA evidence pertaining to the gloves, neither of these offerings alters our conclusion that the glove evidence does not disclose a strong probability that it will change the result if a new trial is granted. The pathologist's report merely contests the conclusions of the coroner's office based on diverging interpretations of the timing of English's body undergoing rigor mortis. Furthermore, Allen's pathologist's report directly contradicts the testimony of Judy Sperry and places English's death prior to the last time Sperry testified to seeing English alive. This evidence would appear to implicate Sperry as being involved in English's death and is completely inconsistent with Allen's theory

that English was killed by two unknown males based on the male DNA recovered from the interior of the left glove. Similarly, the fact that the blood found on Allen's jacket was not connected to the murder of English is not exculpatory in light of the other significant evidence against Allen. Nor does it bolster the glove-related evidence to a position where we can say there is a strong probability that the outcome of the trial would be changed.

{¶26} In light of the above facts and within the context of what the Ohio Supreme Court described as "ample evidence" of Allen's guilt we find no abuse of discretion on the part of the trial court in denying Allen's motion for a new trial.

## II. Petition for Postconviction Relief

{¶27} In his second assignment of error, Allen argues that the trial court erred in denying his petition for postconviction relief seeking to set aside his death penalty determination and verdict and that the trial court further erred in denying the petition without holding a hearing. A postconviction relief proceeding is a collateral civil attack on a judgment, therefore, the judgment of the trial court is reviewed under the abuse of discretion standard. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77.

{¶28} Based on the Orchid Cellmark DNA test results of the gloves Allen sought relief pursuant R.C. 2953.21(A)(1)(a) which provides:

> Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, and any person who has been convicted

of a criminal offense that is a felony and who is an offender for whom DNA testing that was performed under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code and analyzed in the context of and upon consideration of all available admissible evidence related to the person's case as described in division (D) of section 2953.74 of the Revised Code provided results that establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death, may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

R.C. 2953.21(A)(1)(a)

**{¶29}** Allen first argues that he has demonstrated a constitutional violation in the form of the alleged *Brady* violation addressed in the first assignment of error. Having found no *Brady* violation, Allen's reiteration of that argument under this assignment of error lacks merit.

**{¶30}** Allen also argues that the newly discovered Orchid Cellmark DNA test results were the result of DNA testing performed under R.C. 2953.71 to 2953.81. To establish Allen's right to relief, however, the test results would need to establish, by clear and convincing evidence, Allen's actual innocence of the subject offenses.[4] R.C. 2953.21(A)(1)(b) defines "actual innocence" as follows:

---

[4]We disregard Allen's framing of the argument that the test results somehow call into question an aggravating circumstance relating to his sentence of death. The sole question raised by Allen's DNA evidence is the identity of the individual who robbed and murdered English.

"[A]ctual innocence" means that, had the results of the DNA testing conducted under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code been presented at trial, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the person's case as described in division (D) of section 2953.74 of the Revised Code, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted, or, if the person was sentenced to death, no reasonable factfinder would have found the petitioner guilty of the aggravating circumstance or circumstances the petitioner was found guilty of committing and that is or are the basis of that sentence of death.

R.C. 2953.21(A)(1)(b)

{¶31} "Clear and convincing evidence requires a degree of proof that produces a firm belief or conviction regarding the allegations sought to be proven." *State v. Gunner*, 9th Dist. Medina No. 05CA0111-M, 2006-Ohio-5808, ¶ 8. "It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶32} In this instance, Allen has failed to establish actual innocence by clear and convincing evidence for the same reasons we held in the first assignment of error that the glove-related DNA evidence did not disclose a strong probability that it would change the result if a new trial was granted. As detailed above, the DNA of two unknown males found inside the left glove recovered from the scene does not demonstrate that no reasonable factfinder would have found Allen guilty of the subject offenses when considered within the context of all admissible evidence related to this case.

**{¶33}** Similarly, we find no merit in Allen's argument that the trial court erred in denying his petition without holding a hearing. It is well established that "courts are not required to hold a hearing in every postconviction case." *State ex rel. Madsen v. Jones*, 106 Ohio St.3d 178, 2005-Ohio-4381, 833 N.E.2d 291, ¶ 10. The court acts as a gatekeeper in reviewing the evidence to determine if there are substantive grounds for relief. *See State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 51. Where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief, the court may dismiss a petition for postconviction relief without a hearing. *See State v. Calhoun*, 86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905, paragraph two of the syllabus; *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶ 22.

**{¶34}** Based on the above analysis of the evidentiary material within the full context of the evidence introduced at trial, we cannot say that the trial court abused its discretion in denying Allen's petition for postconviction relief without holding a hearing.

**{¶35}** Allen's second assignment of error is overruled.

**{¶36}** The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

ANITA LASTER MAYS, J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS WITH SEPARATE OPINION


MARY EILEEN KILBANE, J., DISSENTING:

{¶37} I respectfully dissent. I would sustain Allen's second assignment of error and remand the matter to the trial court to conduct an evidentiary hearing on Allen's petition.

{¶38} While a hearing is not automatically required on every petition for postconviction relief, the trial court is required to consider whether the petitioner has set forth sufficient operative facts in the files and record of the case to establish substantive grounds for relief. *State v. Stedman*, 8th Dist. Cuyahoga No. 83531, 2004-Ohio-3298, ¶ 24, citing *State ex rel. Jackson v. McMonagle*, 67 Ohio St.3d 450, 1993-Ohio-143, 619 N.E.2d 1017; *Calhoun*, paragraph two of the syllabus. If the petition, the files, and the records of the case demonstrate that the petitioner is entitled to relief, the court must then proceed to a prompt hearing on the issues. R.C. 2953.21(E).

{¶39} This court has stated that "there are two conditions that must be satisfied prior to the court holding a hearing: the petitioner must state substantive grounds for

relief, and the issue cannot be determined through a review of the record." *State v. Broom*, 8th Dist. Cuyahoga No. 96747, 2012-Ohio-587, ¶ 14. We have "additionally recognized that trial courts are required to hold an evidentiary hearing only if the petitioner is relying on facts outside the record." *Id.*, citing *State v. Milanovich*, 42 Ohio St.2d 46, 325 N.E.2d 540 (1975).

{¶40} The petition at issue in this appeal was filed on November 28, 2011. In his petition, Allen argues the newly discovered DNA evidence establishes that the jury could not have found him guilty of aggravated murder and the aggravating circumstances, which would warrant the vacation of the death penalty. After several continuances, the state opposed Allen's petition on April 30, 2012. On August 14, 2015, nearly four years later, the trial court denied Allen's petition. In its comprehensive opinion, the trial court found that Allen has not provided any evidence demonstrating substantive grounds for relief.

{¶41} However, when this newly discovered DNA evidence is considered with his trial attorney's affidavit, it is arguable that this evidence puts "the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), paragraph one of the syllabus. As a result, the petition and supporting materials raise a genuine issue whether the state violated Allen's due process rights under *Brady*. Morever, given the length of time between when Allen filed his petition and when the court issued its ruling, I would find that the failure to conduct a hearing under these circumstances was unreasonable and arbitrary.

**{¶42}** I recognize the trial court could reach the same conclusion after a hearing on remand. However, in this case, the newly discovered DNA, the questionable evidentiary concerns, and the long lapse of time all point to the grant of a hearing.

**{¶43}** Accordingly, I would sustain the second assignment of error.