[Cite as *State v. McGuire*, 2018-Ohio-1390.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105732**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DAVID McGUIRE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-604957-A

**BEFORE:** McCormack, P.J., Jones, J., and Keough, J.

**RELEASED AND JOURNALIZED:** April 12, 2018

**ATTORNEYS FOR APPELLANT**

Jon W. Oebker
Zachary J. Adams
John Q. Lewis
Tucker Ellis L.L.P.
950 Main Avenue, Suite 1100
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Mahmoud S. Awadallah
Shannon M. Musson
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, P.J.:

{¶1}    Defendant-appellant David McGuire ("McGuire") appeals from his convictions following a jury trial.    For the reasons that follow, we affirm.

**Procedural and Substantive History**

{¶2}    On March 16, 2016, between 7:00 p.m. and 8:00 p.m., McGuire and his cousin Mac McGuire ("Mac") were arguing outside of McGuire's home at 1237 East 146th Street in East Cleveland.

{¶3}    Mac was sitting in the passenger seat of a car that was backed into the driveway with the door open.    McGuire went upstairs to his third floor apartment, retrieved a gun, returned to the driveway and fired four shots into Mac's legs and groin.

{¶4}    Sultan Muhammad, who was renting the second-floor apartment from McGuire, witnessed the incident from a second-floor window and instructed his girlfriend, Kristen Angel, to call 911.    Angel did so, and two East Cleveland police officers responded to the scene, but not before McGuire fled the scene.    Medical personnel also responded to the scene and transported Mac to the hospital, where he died as a result of gunshot wounds.

{¶5}    Responding officer Kenneth Bolton secured the scene, and Officer Elshawn Williams spoke to Muhammad, Angel, and a neighbor who had heard gunshots and saw McGuire standing near the car with his hands on his head several minutes later.

{¶6}    McGuire was arrested on March 28, 2016.    On April 12, 2016, a Cuyahoga County grand jury indicted McGuire on Count 1, aggravated murder in violation of R.C.

2903.01(A); Count 2, murder in violation of R.C. 2903.02(B); Count 3, felonious assault in violation of R.C. 2903.11(A)(1); and Count 4, having weapons while under disability in violation of R.C. 2923.13(A)(3). Counts 1 through 3 each carried one-year and three-year firearm specifications pursuant to R.C. 2941.141(A) and 2941.145(A).

{¶7} McGuire pleaded not guilty to all four counts. A jury trial began on March 28, 2017. During the trial, it became apparent during the defense's cross-examination of Officer Williams, one of the responding officers, that he had been wearing a body camera at the time he responded to the incident.

{¶8} Upon learning this information, McGuire's counsel discussed making an oral motion for mistrial based on two alleged *Brady* violations by the state. The court noted that a complete record on the issue of body camera evidence had not been developed, and it declined to consider such a motion at that time.

{¶9} At a later point in trial, defense counsel discovered that Officer Bolton, the responding officer who was the first to arrive at the scene, was being investigated for a separate incident involving misconduct during a traffic stop. Upon discovering this, defense counsel made an oral motion for mistrial, based on both the body camera evidence and the investigation into Officer Bolton. First, McGuire asserted that the state violated his rights by failing to turn over any information regarding an unrelated investigation into Officer Bolton. The East Cleveland Police Department terminated Officer Bolton, and he was subsequently — after the trial in this case — indicted and pleaded guilty to gross sexual imposition and interfering with civil rights. Second,

McGuire asserted that the state violated his rights by failing to turn over any body camera evidence related to this incident. While there was uncontroverted testimony that the responding officers, including Bolton, were wearing body cameras when they responded to the crime scene, the state did not turn over any of the body camera footage, and the record reveals that the East Cleveland Police Department either lost or destroyed any body camera evidence that had existed.

{¶10} The trial court denied this motion as it related to evidence regarding the investigation into Officer Bolton's misconduct, but imposed a sanction in the form of allowing defense counsel wide latitude in its cross-examination of Detective Harvey, the lead detective on this case. When it denied this motion, the court stated again that it was declining to decide anything related to the body camera evidence because at that point, there was still not a fully developed record as to the potential existence of this evidence.

{¶11} At a later point in trial, defense counsel informed the court that after discussing the matter at length with McGuire, they would not be making another oral motion for mistrial based on the state's failure to turn over body camera evidence. Instead, defense counsel moved for a sanction for the discovery violation in the form of an additional jury instruction, asking the court to instruct the jury that they may infer from the state's failure to preserve body camera evidence that the evidence was relevant to the case and favorable to McGuire.

{¶12} Ultimately, the court instructed the jury on the issue as follows:

You have also heard evidence that two East Cleveland Police officers who arrived first at the crime scene used body worn cameras. The East

Cleveland Police Department was required to preserve the images and audio from those cameras. The State of Ohio was obligated to provide all of those recordings to counsel for the defendant. Those obligations were not met. You may consider these failures and draw any reasonable inference from them when deciding whether the State of Ohio has proved the charges beyond a reasonable doubt.

**{¶13}** Following deliberations, the jury returned a verdict of guilty on all counts and corresponding specifications.

**{¶14}** On April 12, 2017, the trial court held a sentencing hearing. Counts 1 through 3 merged for sentencing, and the state elected to sentence on Count 1. On Count 1, the trial court sentenced McGuire to life imprisonment with parole eligibility after 25 years. For the corresponding firearm specification, the trial court sentenced McGuire to a consecutive prison term of three years. Finally, the trial court sentenced McGuire to a prison term of 30 months on Count 4, to be served concurrently, and imposed court costs.

**{¶15}** McGuire appealed his conviction, presenting one assignment of error for our review.

**Law and Analysis**

**{¶16}** In his sole assignment of error, McGuire argues that the state of Ohio violated his right to a fair trial by deliberately withholding exculpatory evidence. Specifically, McGuire argues first that without the body camera footage, he was unable to put forth a self-defense argument at trial without this evidence of the position of Mac's body as he lay dying in the car. He further argues that the state's withholding of evidence relating to Officer Bolton's misconduct investigation was relevant impeachment

evidence. McGuire addresses each alleged violation individually, but ultimately argues that the two are intertwined and therefore should be analyzed for their cumulative effect on his due process rights.

{¶17} Due process requires that the state provide criminal defendants with any evidence that is material to either their guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

{¶18} The defendant carries the burden to prove a *Brady* violation rising to the level of a denial of due process. *State v. Iacona*, 93 Ohio St.3d 83, 92, 752 N.E.2d 937 (2001). There are three elements of a *Brady* violation: "(1) evidence at issue must be favorable to the accused because it is exculpatory or impeaching; (2) evidence must have been willfully or inadvertently suppressed by the State; and (3) prejudice ensued." *State v. Allen*, 8th Dist. Cuyahoga No. 103492, 2016-Ohio-7045, ¶ 12, citing *Skinner v. Switzer*, 562 U.S. 521, 536, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011), citing *Strickler v. Greene*, 527 U.S. 263, 281, 282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

{¶19} In reviewing a *Brady* materiality question on appeal, we apply a de novo standard of review. *Allen* at ¶ 11.

**{¶20}** Although McGuire urges this court to consider the alleged violations together and analyze their cumulative effect, the different character of each alleged violation requires us to first consider them individually.

### Bolton Investigation

**{¶21}** With respect to the state's failure to turn over information regarding the Bolton investigation, we agree with the state that this did not amount to a *Brady* violation.

**{¶22}** As noted above, *Brady* material can be either exculpatory to the defendant or impeachment material related to a government witness. Crim.R. 16(B)(2) provides that upon receipt of a written demand for discovery by the defendant, the state shall provide criminal records of the defendant, a codefendant, and the record of prior convictions that could be admissible under Rule 609 of the Ohio Rules of Evidence of a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal. The Supreme Court has held that "when the reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within the general rule enunciated in *Brady*. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), citing *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

**{¶23}** McGuire asserts that the state's failure to disclose information related to the Bolton investigation violated its duty under *Brady* and *Giglio* to turn over impeachment evidence.

**{¶24}** We first note that *Brady* does not apply here because the information that the state was alleged to have suppressed — the fact that Bolton was being investigated for misconduct — was publicly available. "*Brady* does not apply to materials that are not 'wholly within the control of the prosecution.'" *United States v. Delgado*, 350 F.3d 520, 527 (6th Cir.2003), quoting *Coe v. Bell*, 161 F.3d 321, 344 (6th Cir.1998). There is no need to require the state to "disclose" material that is readily available to the defense. Indeed, defense counsel learned of the Bolton investigation by conducting a Google search during trial.

**{¶25}** Further, to the extent that McGuire's argument here rests on not only the existence of the Bolton investigation but specific details acquired by the state in the course of the investigation, this is still insufficient to create a *Brady* violation. It is important to note that the state never called Bolton as a witness. This is critical, as the obligation set forth in *Giglio* relates to impeachment evidence. It is impossible to impeach an individual who does not testify as a witness. While we acknowledge that the state included Officer Bolton on its initial witness list provided to the defense, he was ultimately not called as a witness. For these reasons, this does not amount to a *Brady* violation.

**{¶26}** Whether suppressed evidence is favorable "turns on the cumulative effect of all suppressed evidence favorable to the defense, not on the evidence considered item by item." *State v. Apanovitch*, 107 Ohio App.3d 82, 92, 667 N.E.2d 1041 (8th Dist.1995). However, because we find that the Bolton investigation was not *Brady* evidence, we

decline to consider the cumulative effect of the investigation and the body camera evidence.

**Body Camera Evidence**

**{¶27}** McGuire also argues that his due process rights were violated by the state's failure to turn over the body camera footage from the responding officers, as this was crucial to his defense and could have supported a theory of self-defense. Specifically, McGuire argues that if the position of Mac's body appeared in the video to be even slightly altered from how it was described by Officer Williams, the state's entire theory of the case would have been disrupted. This assertion is without merit.

**{¶28}** Applying the *Brady* analysis laid out above, McGuire's claim here fails. Courts have consistently rejected *Brady* claims that are too speculative, requiring defendants to substantiate claims that the evidence in question was favorable and material. *See State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, *State v. Hughes*, 8th Dist. Cuyahoga No. 62884, 1993 Ohio App. LEXIS 5277 (Nov. 4, 1993).

**{¶29}** Not only is McGuire's assertion that the body camera evidence might have supported a claim of self-defense speculative, it also ignores other evidence in the record that would refute such a theory — specifically, the location of the bullet wounds and the path of the bullets through Mac's body. The bullets entered Mac's body through the back of his thighs and pelvis and traveled up and across his body, with one bullet reaching his liver and another piercing his lung. The medical examiner explained in his

testimony that this was consistent with the victim laying down in the vehicle with his legs up in a defensive posture. Such a position is also consistent with the eyewitness testimony of Sultan Muhammad.

{¶30} Finally, McGuire made statements to the police from the time of his arrest and through trial that he did not possess a gun and was not at the crime scene when Mac was shot. Therefore, even if body camera evidence existed that supported a self-defense theory of the case, McGuire is unable to show how he was prejudiced by this alleged *Brady* violation.

{¶31} Although McGuire's claim fails under the three-prong test discussed above, we note that this case is different than a traditional *Brady* case because the body camera footage did not exist at the time of trial. The state argues that it "cannot be faulted for failing to disclose evidence it did not have." *State v. McClurkin*, 10th Dist. Franklin No. 08AP-781, 2009-Ohio-4545, ¶ 57. This statement is generally accurate, but it does not account for cases in which the state loses, destroys, or otherwise fails to preserve evidence. The state argues that there is no evidence suggesting that the state ever possessed body camera footage from Officers Bolton and Williams from March 16, 2016. While the record contains no evidence that the prosecutor ever possessed body camera evidence, the same cannot be said of the East Cleveland Police Department.

{¶32} The record shows that the parties stipulated that "a thorough search was made on March 30, 2017 for body camera video of Bolton and Williams from March 16th or even the 17th, and none can be located." There is also evidence in the record, put

forth by the state's witnesses, that at least one of the two responding officers was wearing his body camera on March 16, had his camera on, and subsequently followed department procedures for downloading the footage. We agree with the state that "'materials not possessed by the government cannot be suppressed within the meaning of *Brady.'*" *McClurkin*, quoting *State v. Zirkle*, 4th Dist. Meigs No. 95 CA 21, 1997 Ohio App. LEXIS 4173, 11 (Aug. 27, 1997). However, this case is distinguishable from the cases cited by the state, where the evidence in question never existed or was never in the government's possession. In cases where the evidence was at some point in the possession and control of the government, but is no longer available, we must apply a different analysis.

{¶33} "[W]hen potentially exculpatory evidence requested by a defendant is permanently lost, 'courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed.'" *State v. Mapp*, 3d Dist. Union No. 14-10-34, 2011-Ohio-4468, ¶ 25, citing *California v. Trombetta*, 467 U.S. 479, 486, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). In light of this difficulty, a different analysis is required when dealing with the state's failure to preserve evidence of an uncertain exculpatory value, "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 9. "Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful

evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

**{¶34}** The defendant bears the burden of showing that the government acted in bad faith. *Geeslin* at ¶ 14. "'The term "bad faith" generally implies something more than bad judgment or negligence.'" *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 81, quoting *State v. Tate*, 5th Dist. Fairfield No. 07 CA 55, 2008-Ohio-3759, ¶ 13. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking the nature of fraud." *Id.* at ¶ 81, quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983).

**{¶35}** Here, McGuire alleges that Bolton somehow corrupted the investigation of his case. In support of this allegation, McGuire relies on Bolton's unrelated criminal case. A reference to an unrelated incident is insufficient to establish that the state acted in bad faith in failing to preserve the body camera evidence. Based on the East Cleveland Police Department policy articulated on the record at trial, we know that the failure to preserve the body camera evidence constitutes a breach of a known duty. We cannot, however, conclude that it was done through some ulterior motive or ill will as required for a finding of bad faith. There is nothing in the record indicating bad faith as alleged by McGuire. In fact, the record reveals a thorough, though ultimately fruitless, effort by the prosecutor to procure body camera evidence.

**{¶36}** In light of the foregoing, we overrule McGuire's assignment of error and affirm his conviction and sentence.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
KATHLEEN ANN KEOUGH, J., CONCUR